UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT MOORE, et al.,

    Plaintiffs,

                                      CASE NO. 1:08-cv-1167

v.

                                      HON. ROBERT HOLMES BELL

MENASHA CORPORATION,

    Defendant.
_____/

# **O P I N I O N**

This matter is before the Court on the parties' cross-motions for attorney fees and costs. Resolution of this matter in its entirety requires the Court to consider five motions:

- Plaintiffs' Motion for Attorney Fees and Expenses (Dkt. No. 46),

- Defendant's Motion for Attorney Fees and Costs (Dkt. No. 52),

- Defendant's Motion to Disallow Some or All of Plaintiffs' Costs (Dkt. No. 60),

- Plaintiffs' Motion for Leave to File Plaintiffs' Reply to Defendant's Response (Dkt. No. 70), and

- Defendant's Motion for Leave to File a Reply Brief in Support of its Motion for Attorney Fees and Costs (Dkt. No. 72).

For the reasons stated below, both Plaintiffs and Defendant will be awarded attorney fees and costs. Specifically, Plaintiffs will be awarded attorney fees and costs in the amount of

$125,000, and Defendant will be awarded attorney fees and costs in the amount of $45,000. The motions to file replies will be granted.[1] The motion to disallow costs will be denied.

## I. Background

In this action, Plaintiffs, four retired employees of Defendant Menasha Corporation and spouses of three of those retired employees, argued Defendant promised them lifetime health insurance benefits and then reneged on that promise. They brought suit under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Both parties filed motions for summary judgment, and on July 15, 2010, this Court granted each motion in part and denied each motion in part. (Dkt. No. 40.)

With regard to three of the four retired employees, the Court found that although the relevant contract language was ambiguous, "[t]he extrinsic evidence is undisputed and so overwhelming that no reasonable fact finder could determine that the parties did not intend to extend lifetime health insurance benefits to retired employees." (Dkt. No. 39, 07/15/2010 Op. 14-15.) With regard to the remaining retired employee, the Court found that the relevant contract language unambiguously granted him lifetime benefits, and that Defendant's argument to the contrary was "meritless." (*Id.* at 15.) The Court noted that, regarding this last retired employee, even had the language been ambiguous, "the extrinsic evidence clearly

---

[1] Under Local Rule 7.3(c), replies to nondispositive motions may not be filed without leave of the Court. The Court will grant leave.

indicates that the parties intended [the relevant contract provision] to extend health insurance to retirees for life." (*Id.* at 16.) The Court also found, examining the relevant contract provisions and applying the relevant law, that Defendant could not unilaterally divest the retired employees of benefits. (*Id.* at 22.) Accordingly, the Court granted Plaintiffs summary judgment to the extent that they so moved on behalf of the retired employees. With regard to the spouses of the retired employees, however, regardless of the extrinsic evidence, the Court found that the contract language was clear, and that none of it could "reasonably be read to extend health insurance benefits to spouses of retired employees." (*Id.*) Thus, the Court granted Defendant summary judgment on the claims for lifetime insurance benefits brought by the spouses. (*Id.*)

In short, the Court granted Plaintiffs' motion for summary judgment to the extent that the motion pertained to the retired employees and denied it in all other respects; and the Court granted Defendant's motion for summary judgment to the extent that the motion pertained to the spouses and denied it in all other respects. So, in the language relevant to the present motions, both Plaintiffs and Defendant are able to show some degree of success on the merits.

## II. Discussion

**A.)    Relevant Law**

This action having been brought under ERISA, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). In

3

order for this Court to exercise its "broad discretion" in granting fees, however, "a fees claimant must show 'some degree of success on the merits.'" *Hardt v. Reliance Std. Life Ins. Co.*, 130 S. Ct. 2149, 2158 (2010) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 693 (1983)). Previous to the Supreme Court's decision in *Hardt*, courts in this Circuit had employed a five-factor test, referred to as the "*King* factors," to determine whether it was proper to award fees under § 1132(g)(1). *See Gaeth v. Hartford Life Ins. Co.*, 538 F.3d 524, 529 (6th Cir. 2008). In *Hardt*, the Supreme Court discussed an identical test employed in the Fourth Circuit. *Compare Hardt*, 130 S. Ct. at 2154 n.1, *with Gaeth*, 538 F.3d at 529. The Supreme Court found that the five-factor test "bear[s] no obvious relation to § 1132(g)(1)'s text or to our fee-shifting jurisprudence" and therefore is "not required for channeling a court's discretion when awarding fees." *Hardt*, 130 S. Ct. at 2158. Nonetheless, the Supreme Court "do[es] not foreclose the possibility that once a claimant has satisfied this requirement [of showing some degree of success on the merits], and thus becomes eligible for a fees award under § 1132(g)(1), a court may consider the five factors." *Id.* at 2158 n.8. The *King* factors are:

  (1) the degree of the opposing party's culpability or bad faith;
  (2) the opposing party's ability to satisfy an award of attorney's fees;
  (3) the deterrent effect of an award on other persons under similar circumstances;
  (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and
  (5) the relative merits of the parties' positions.

*Secretary of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985).

**B.) Application**

As noted above, both Plaintiffs and Defendant have moved for attorney fees and costs and both have shown "some degree of success on the merits." *Hardt*, 130 S. Ct. at 2158. In neither case was their success a "trivial success on the merits" or a "purely procedural victor[y]" – Plaintiffs won summary judgment with respect to four of the seven claimants; Defendant won summary judgment with respect to the other three. *Id.* (quoting *Ruckelshaus*, 463 U.S. at 688 n.9). Thus, both Plaintiffs and Defendant have satisfied the threshold requirement for a fees award under § 1132(g)(1). Moreover, under § 1132(g)(1), the Court has discretion to allow fees and costs to either party.

The parties having satisfied the requirement, this Court considers the *King* factors. Though consideration of these factors is no longer mandatory, *see Hardt*, 130 S. Ct. at 2158, this Court deems them to be a useful guide to exercising its discretion, and both parties have briefed the factors extensively. (*See* Pls.' Mot. 4-10; Def.'s Mot. 5-9; Dkt. No. 65, Pls.' Resp. 3-9; Dkt. No. 67, Def.'s Resp. 4-7.)

The first factor is the degree of the opposing party's culpability or bad faith. Here, the Court finds that neither party acted in bad faith. Although the Court found that "no reasonable fact finder could determine that the parties did not intend to extend lifetime health insurance benefits to retired employees," (07/15/2010 Op. 14-15), the contract was ambiguous and Defendant's arguments were not frivolous. Although the Court found that no contract provisions could "reasonably be read to extend health insurance benefits to

5

spouses," (*id.* at 22), and thus held that extrinsic evidence could not be considered, the extrinsic evidence may well have supported Plaintiffs' belief that spouses were covered. However, the Court may award attorney fees even in the absence of a finding of bad faith, *Wells v. United States Steel & Carnegie Pension Fund*, 76 F.3d 731, 736 (6th Cir. 1996), and here, both parties advanced arguments which brief review revealed to be meritless. *See McPherson v. Employees' Pension Plan of Am. Re-Ins. Co., Inc.*, 33 F.3d 253, 256 (3rd Cir. 1994) ("A losing party may be culpable . . . without having acted with an ulterior motive."). While the Court could find that attempting to deprive retirees of their promised benefits is culpable conduct, neither bad faith, culpability, nor the lack of either or both is dispositive, *Foltice v. Guardsman Prods.*, 98 F.3d 933, 937 (6th Cir. 1996), and there are other factors to consider.

The second factor – the parties' abilities to pay – is likewise nondispositive. *Id.* Here, the factor is particularly unhelpful. In this case, the Court is considering requests on behalf of both Plaintiffs and Defendant. Plaintiffs assert, and Defendant does not deny, that Defendant is more than able to satisfy an award of attorney fees. (Pls.' Mot. 7; Def.'s Resp. 5.) While no representations have been made regarding Plaintiffs' abilities to satisfy an award, the Court notes that their counsel was retained, and the fees and costs the Court will award Plaintiffs exceed those which the Court will award to Defendant.

Both parties can rightly claim that their respective victories may have some deterrent effect on others. Plaintiffs attempted by means of litigation to claim contractual benefits for

6

the spouses for which there was no support in the relevant contracts. Defendant attempted by fiat to deprive retired employees of their promised retirement benefits unilaterally and without a contractual basis. Both of these activities ought to be discouraged and the award of fees may serve to further that end.[2] Having so recognized, the Court also finds that Defendant's conduct may be somewhat more susceptible to, and deserving of, deterrence.

So, too, both Plaintiffs and Defendant can claim to be conferring a common benefit on all participants and beneficiaries of the ERISA plans with regard to their meritorious and successful arguments. Plaintiffs' victory insured that the four retired employees involved in this lawsuit will not be impermissibly denied their benefits. Although this is not a class action, one may reasonably infer that Plaintiffs' victory will discourage Defendant from depriving similarly situated retired and soon-to-be retired employees of the benefits to which they are likewise entitled. In that way, although not acting as a class, Plaintiffs have secured a common benefit for all participants and beneficiaries of their plans. Defendant, too, secured a common benefit for all participants and beneficiaries by protecting the plans' resources from unentitled claims.

The factor which weighs heaviest in the Court's consideration, however, is the relative merits of the parties' positions. Plaintiffs and Defendant each presented a position which had tremendous merit: Plaintiffs argued that retired employees were entitled to set

---

[2] Recognizing that policy behind ERISA discourages deterrence of honest plaintiffs from seeking benefits, this factor does not weigh heavily in the Court's consideration, particularly with regard to deterrence of future plaintiffs.

benefits; Defendant argues that their spouses were not. Plaintiffs and Defendant each presented and defended a position which lacked merit: Plaintiffs argued that spouses were entitled to set benefits; Defendant argued that retired employees were not. Plaintiffs had a position of which the relative merits were much greater than those of Defendant's contrary position, and Defendant had a position of which the relative merits were much greater than those of Plaintiffs' contrary position. Thus, looking at the issues independently, the Court finds that Plaintiffs are entitled to attorney fees and that Defendant is entitled to attorney fees.

Given that both parties have moved for fees and costs, the Court can take a broader view. The Court is in a position to examine the relative merits across the entire case, and finds that, on the whole, Plaintiffs' positions were more meritorious than Defendant's. Although there was no basis in the contracts for awarding benefits to Plaintiff spouses, the extrinsic evidence across the board manifestly supported Plaintiffs' positions. While an experienced plaintiff's attorney, such as the one in this case, may have been able to discourage his clients from pursuing through litigation an honestly held, albeit legally deficient, belief that the spouses of retirees were entitled to benefits, there is no great culpability in his failure to do so. Defendant corporation, however, can and should be expected to have more than "plausible" arguments for unilaterally depriving its retirees of the benefits that it promised them, (*see* Def.'s Resp. 4), especially where the extrinsic evidence so clearly shows that the original intent of the parties was to extend lifetime health

insurance benefits. While examining the relative merits of each issue independently reveals that each of Plaintiffs and Defendant are entitled to some of the fees and costs for which they move, examining all of the positions collectively reveals that Plaintiffs are entitled to more of the fees and costs for which they move than is Defendant.

In that context, the Court turns to the specific fees and costs which the parties by motion request.[3] The parties have each properly applied the "lodestar" approach of calculating attorney fees, albeit in somewhat different ways.[4] Defendant has raised numerous arguments to the effect that both Plaintiffs' counsel's hours and his hourly rates are dramatically overstated. With regard to the number of hours expended, Defendant argues that counsel's work was redundant and unnecessary (Def.'s Resp. 13), that his billing system calculates hours inaccurately (*id.* at 13-14), that his billing was insufficiently detailed (*id.* at 14-16), that he is seeking to recover fees not associated with this litigation (*id.* at 16-17), that he billed for exclusively administrative tasks (*id.* at 17-18), and that block billing is inherently unreasonable (*id.* at 17). The Court does not find a great deal of merit in these arguments. Defendant's evidence for these arguments is drawn largely, if not exclusively,

---

[3] Plaintiffs request $159,900 for attorney time, $6,843.75 for paralegal and law clerk time, and $2,312 in expenses. Defendant requests $87,694.50 for attorney time and $1,071.35 in costs.

[4] Plaintiffs have multiplied the number of attorney hours, paralegal hours, and law clerk hours actually expended on the litigation by a reasonable hourly rate, as calculated by the relevant comparisons in cases and markets. Defendant has multiplied attorney hours actually expended on the litigation by the hourly rate counsel actually billed to their client, a rather lower figure.

from Plaintiffs' counsel's summary of time. (Pls.' Mot., Ex. I.) The tasks recorded to this summary were apparently recorded in no more or less detail than Plaintiffs' counsel provided in bills to his clients. Most compellingly, though, the Court notes that Plaintiffs' counsel represents that he spent a total of 399.75 hours on this litigation, and Defendant's counsel represent that they spent a total of 363.80 hours. These two numbers are roughly comparable, differing by less than 10%, and if the Court were inclined to discount one, it would likely to be inclined to discount the other as well. All parties in this matter were represented by highly skilled and experienced counsel, and if those counsel concur that litigating this matter to a judgment on the merits required 350-400 hours of attorney time, the Court will not contest that determination.

The Court next considers the fees suggested by counsel. Plaintiffs' counsel has suggested a rate of $400 per hour for his work.[5] The Court's primary concern in awarding attorney fees is that the fees be reasonable. *See Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). A reasonable fee is one that is adequate to attract competent counsel, but does not produce windfalls to attorneys. *Blum v. Stenson*, 465 U.S. 886, 897 (1984). If necessary, the lodestar amount can be adjusted for reasonableness by applying the 12-factor test enunciated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.

---

[5]Defendant argues that this rate should be reduced to reflect Plaintiffs' counsel's actual billing rate in this matter. The Court is not bound to limit attorney fees to that figure, which is well below what Defendant recognizes as the "modest" rate billed by its most junior attorney. (*See* Def.'s Mot. 13; Def.'s Resp. 11.)

1974), and approved by the Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 432 (1983). *Barnes v. Cincinnati*, 401 F.3d 729, 746 (6th Cir. 2005).[6] A reasonable hourly billing rate is generally calculated according to the prevailing market rates in the relevant community. *Id.* at 895; *Amer. United for Separation of Church and State v. Sch. Dist. of Grand Rapids*, 717 F. Supp. 488, 495 (W.D. Mich. 1989). "[T]he burden is on the fee applicant to produce satisfactory evidence - in addition to the attorney's own affidavits - that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 896 n.11. Plaintiffs have cited a number of cases in which counsel was awarded between $390 and $475 per hour. (Pls.' Mot. 14-18.) All of the cases to which Plaintiffs cite are class actions, and many of them are from other parts of the country. (*Id.*, Exs. M-W.) The Court does not believe that class actions are comparable to the present action, and Plaintiffs' counsel has produced no affidavits in support of his claims. In similar circumstances, the Court has turned to the most recent *Economics of Law Practice* survey issued by the State Bar of Michigan to determine the prevailing market rate. *See, e.g., Commodity Futures*

---

[6]The twelve factors are: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal service properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesireability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Barnes*, 401 F.3d at 745-46.

*Trading Comm'n v. Aurifex Commodities Research Co.*, No. 1:06-CV-166, 2006 WL 1892538 (W.D. Mich. July 10, 2006); *Blackmore v. Misner*, No. 1:02-CV-332, 2005 WL 2704506 (W.D. Mich. Oct. 20, 2005). According to the most recent *Economics of Law Practice* survey, *see* http://www.michbar.org/pmrc/articles/0000146.pdf (Last visited Feb. 28, 2011), the upper quartile of attorneys with more than 35 years in practice reported an hourly rate of $315 (*id.* at Ex. 5),[7] the upper quartile of employment litigation attorneys reported an hourly rate of $300 (*id.* at Ex. 7), the upper quartile of attorneys practicing in Kent County (where the hearings in this case were held) reported an hourly rate of $300 (*id.* at Ex. 8), and the upper quartile of attorneys practicing in Oakland County (where Plaintiffs' counsel's office is located) reported an hourly rate of $300 (*id.*). On this basis, considered in light of the other evidence presented in this matter, the Court concludes that Plaintiffs' counsel's hourly rate should be reduced from $400 to $300. Plaintiff has presented evidence that an appropriate rate for paralegals and law clerks is $125. The Court accepts this figure. Accordingly, Plaintiffs' lodestar amount is $126,768.75.[8]

Defendant's counsel have suggested rates for their work which represent what they actually billed to their client.[9] Although lower than the rate suggested by Plaintiffs' counsel

---

[7] Plaintiffs' counsel reports having 38 years in practice. (Pls.' Mot. 17.)

[8] $126,768.75 = (399.75 hours)*($300/hour) + (54.75 hours)*($125/hour)

[9] Three attorneys from the firm of Miller, Canfield, Paddock, and Stone, P.L.C. were engaged by Defendant in this matter. Their hourly rates were $290 and $270 for the senior attorneys and $185 for the more junior attorney.

for his services, they are comparable after the above reduction, and the Court will accept Defendant's figures at face value. Accordingly, Defendant's lodestar amount is $87,694.50.[10] However, as discussed below, this lodestar will be adjusted downward based upon the results obtained.

Like attorney fees, the Court has broad discretion to award costs to parties in ERISA actions who have shown some degree of success on the merits. *See* 29 U.S.C. § 1132(g)(1); *Hardt*, 130 S. Ct. at 2158. Both parties here have requested costs, and Defendant has moved to disallow some or all of Plaintiffs' costs. In its motion to disallow some or all of Plaintiffs' costs, Defendant argues that Plaintiff should not be entitled to receive its $350 filing fee because of its limited success, or that Plaintiff should only be entitled to $200 of the $350 (that is, $350 times the number of plaintiffs who were successful in their claims divided by the total number of plaintiffs: ($350)*(4/7) = $200). (Dkt. No. 60, Def.'s Mot. to Disallow 2 n.1.) The Court disagrees. The filing fee would have been the same regardless of the number of plaintiffs involved in the litigation. The motion will be denied, and the $350 filing fee will be included in the Court's determination of total attorney fees and costs to be awarded, below. With regard to the balance of the costs requested by each party, the Court has reviewed the requests and has determined that the requests are appropriate.

Nonetheless, the total amounts requested by the parties will be depreciated somewhat

---

[10]$87,694.50 = (185.3 hours)*($270/hour) + (44.2 hours)*($290/hour) + (134.3 hours)*($185/hour)

to reflect their limited success. (Pls.' Resp. 9-10; Def.'s Resp. 18); *see Hensley*, 461 U.S. at 434 ("There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.' This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief."). While both parties here are able to show some degree of success on the merits, neither can claim unqualified victory, and at least some of the attorney fees and costs must be ascribed to their respective unsuccessful claims. As noted above, Defendant's positions have relatively less merit, and their fees and costs will be depreciated by a greater amount. So too, Defendant's success was on a matter which, although great in financial import, required substantially less briefing and little if any independent legal research. Accordingly, while both Plaintiffs and Defendant will receive fees and costs, neither will receive all that they request, and Defendant will receive far less than Plaintiffs.

### III. Conclusion

There is necessarily some degree of arbitrariness when the Court exercises its discretion in calculating fees and costs. One can perform, and the Court has performed, intricate calculations applying various hourly rates, examining bills line-by-line to determine if charges and time expenditures are appropriate given the results obtained, and weighing the various merits of the parties' arguments and positions. The difficulty is exacerbated where, as here, more than one party can rightly claim attorney fees and costs under the

14

relevant statute, and the Court weighs one position against the other. Here, having carefully balanced the relative merits, degrees of culpability, deterrent effects, and other relevant factors, and in full consideration of the briefing, attorney appearances at hearings, and the tremendous amount of work underlying those efforts, the Court determines that Plaintiffs will be awarded attorney fees and costs totaling $125,000, and Defendant will be awarded attorney fees and costs totaling $45,000.

An order consistent with this opinion will be entered.


Dated: March 1, 2011                                      /s/ Robert Holmes Bell
                                                          ROBERT HOLMES BELL
                                                          UNITED STATES DISTRICT JUDGE